UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL SHAWN KENNETH MORTON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 16 C 11137<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Shawn Kenneth Morton filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for continuation of Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g); 42 U.S.C. § 1381 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision and remand for an award of benefits or in the alternative, for additional proceedings. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

Plaintiff previously received SSI based on disability as a child. After Plaintiff attained age 18, it was determined that he was no longer disabled as of March 1,

2011. (R. at 57, 64). His application was denied on reconsideration on March 4, 2014. (*Id*. at 64, 111). Plaintiff, unrepresented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on March 6, 2015, in Chicago, Illinois. (*Id*. at 64, 8–56). Plaintiff's grandmother also appeared and testified at the hearing. (*Id*.). The ALJ also heard testimony from Grace Gianforte, a vocational expert (VE). (*Id*.). Following the hearing, additional records were entered into the administrative record. (*Id*. at 64, *see* Ex. 15E, 23E, 16F, 18F).

The ALJ denied Plaintiff's request for benefits on July 31, 2015. (R. at 64–78). Applying the five-step sequential evaluation process[1], at step two, the ALJ found that Plaintiff had the following severe impairments: asthma, borderline intellectual functioning, learning disorder, attention deficit hyperactivity disorder, post-traumatic stress disorder, adjustment disorder vs bipolar disorder, and antisocial personality traits. (*Id*. at 66). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (R. at 67–70). The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that, since March 1, 2011, Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> the claimant should never work in environments with exposure to concentrated pulmonary irritants such as dusts, fumes, odors and gases.

---

[1] Step one is not used for redetermining disability at age 18. 20 C.F.R. § 416.987(b).
[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

> The claimant can perform simple, routine, repetitive tasks that can be learned on short demonstration. He is unable to perform work requiring math computation or abilities. He is able to follow simple instructions but cannot plan work independently. The claimant can have no more than occasional contact with supervisors, coworkers and the general public and cannot work on joint tasks with coworkers. The claimant cannot perform fast production pace work and can only perform goal oriented work. (R. at 70).

The ALJ determined at step four that Plaintiff has no past relevant work. (*Id.* at 76). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 77). Accordingly, the ALJ concluded that Plaintiff's disability ended on March 1, 2011 and that Plaintiff has not become disabled again since that date. (*Id.* at 78).

On October 5, 2016, the Appeals Council denied Plaintiff's request for review. (R. at 1–4). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual

findings are supported by substantial evidence." *Id.* (citing 42 U.S.C. § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## III. DISCUSSION

Plaintiff challenges the ALJ's decision, arguing that: (1) the ALJ did not properly assess Plaintiff's mental impairments with respect to Listing 12.05C; (2) the ALJ's determination of Plaintiff's mental RFC was not supported by substantial evidence; (3) the ALJ ignored favorable VE testimony; and (4) the ALJ erred in failing to properly assess Plaintiff's subjective complaints. (Dkt. 19). After reviewing the record and the parties' briefs, the Court is convinced by the second and third arguments and determines that remand is warranted.[3]

**A. The Mental RFC**

The ALJ determined that Plaintiff's borderline intellectual functioning, learning disorder, attention deficit hyperactivity disorder, post-traumatic stress disorder, adjustment disorder vs bipolar disorder, and antisocial personality traits were all severe impairments. (R. at 66). The ALJ concluded that Plaintiff had moderate difficulties in his ability to maintain concentration, persistence or pace and in his social functioning. (*Id.* at 68). The ALJ then assessed Plaintiff's RFC which included the following nonexertional limitations:

> "[He] can perform simple, routine, repetitive tasks that can be learned on short demonstration. He is unable to perform work requiring math computation or abilities. He is able to follow simple instructions but cannot plan work independently. The claimant can have no more than occasional contact with supervisors, coworkers and the general public and cannot work on joint tasks with coworkers. The claimant cannot perform fast production pace work and can only perform goal oriented work." (*Id.* at 70).

---

[3] Because the Court remands on these grounds, it need not address Plaintiff's other arguments at this time.

Based on the RFC assessment and the VE's testimony, the ALJ determined that Plaintiff is capable of performing work as a food service worker/dietary aid, kitchen helper, hand packer, bakery worker, cafeteria attendant, and smaller products assembler. (*Id.* at 77).

The RFC is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling (SSR) 96–8p, at *2. "Your residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The RFC is based on medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft*, 539 F.3d at 676; *see also* SSR 96–5p, at *5 and 20 C.F.R. § 404.1545(a)(1) (both medical and relevant nonmedical evidence should be considered). In assessing the RFC, the ALJ "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see also* SSR 96–8p, at *7.

Here, the ALJ summarized her RFC determination as being supported by:

> [the] lack of objective evidence to support greater limitation, the lack of longitudinal treatment history, good response to routine and conservative treatment and wide ranging daily activities suggesting greater functional capacity. (R. at 76).

The ALJ explained that "the medical record and updated teacher questionnaire reports from [Plaintiff's] GED program reflect significant issues with written lan-

guage, learning and attention…However, he also has significant absences that could also partially account for low performance." (*Id.* at 75). The ALJ concluded that Plaintiff "did well with oral presentations" in school and that "while he had significant issues in the past, he is now regarded as 'very pleasant'." (*Id.*). The ALJ also observed "significant gaps" in Plaintiff's treatment history particularly from 2010 to 2014. (*Id.*). Overall, the ALJ concluded that Plaintiff's medical conditions and symptoms "have improved." (*Id.*). The ALJ also noted Plaintiff was capable of and engaged in a "wide range of activities of daily living" including handling his personal care, attending a GED program, and playing basketball; she also observed that Plaintiff "has a child." (*Id.* at 69).

The Court finds that the ALJ's mental RFC finding did not build a logical bridge between the evidence and her conclusions about Plaintiff's mental limitations. The mental RFC determination was based on insufficient explanations, legally-flawed reasoning, and mischaracterized evidence. These problems relate in particular to the ALJ's assessment of the teachers' reports, Plaintiff's perceived improvement and lack of treatment, and Plaintiff's daily activities.

### *1. Teacher's Reports*

The ALJ gave the two teacher reports "good weight." (R. at 76). In 2011, Plaintiff's special education teacher reported that in acquiring and using information, he had very serious problems in two areas and serious problems in three areas, and in attending and completing tasks, he had very serious problems in four areas. (*Id.* at 194–201). The teacher noted that Plaintiff "needs extra help getting information

and using it"; "forgets things very easily"; "usually needs even more help and support than his disabled peers"; "his workload is reduced and given one concept at a time [and he] gets extended time to complete his tasks." (*Id*. at 195–96). In 2015, Plaintiff's case manager and GED instructor reported that in acquiring and using information, Plaintiff had very serious problems in two areas and a serious problem in one area, and in attending and completing tasks, he had a very serious problem in one area and serious problem in one area. (*Id*. at 299–310). The teacher noted that Plaintiff "needs consistent instruction and practice", "has difficulty staying focused and must work independently on his computer tasks although this is difficult for him", and "needs a good amount of structure and support to function here." (*Id*.).

In her opinion, the ALJ focused on Plaintiff's absences, pleasant demeanor, and handling of oral presentations. But she failed to explain how these findings related to Plaintiff's functional limitations or impairments. Indeed, the teachers did not state that Plaintiff's functional difficulties resulted from or were related to his absences or that, as the ALJ concluded, "significant absences could [] partially account for his low performance." (*Id*. at 75). The ALJ's characterization that a teacher "explained that it was difficult to fully evaluate [Plaintiff's] functioning because of his frequent absences" (*id*.) was a mischaracterization. In that teacher report, under acquiring and using information, the teacher did not provide a rating for "learning new material" instead noting that Plaintiff "seems ok when in class- difficult to evaluate- absent so much doesn't do homework." (*Id*. at 300). The teacher noted that only one of the ten questions under acquiring and using information was difficult to

evaluate, and among the other areas, Plaintiff had very serious problems in two areas and a serious problem in one area.

The ALJ also acknowledged that Plaintiff required "significant accommodations in high school" (R. at 75) but did not discuss how that factored into the RFC, other than to imply that Plaintiff's condition improved based on a teacher's note that he was "pleasant." Thus despite giving "good weight" to the teacher reports, which found that Plaintiff had serious and very serious problems in acquiring and using information and attending and completing tasks and specifically noted Plaintiff's difficulties focusing and that he needed *more support than his disabled peers*, the ALJ did not sufficiently explain her conclusion about his mental RFC.

## *2. Treatment History and Improvement*

To support her RFC finding, the ALJ cited "the lack of longitudinal treatment history", "good response to routine and conservative treatment" and "overall improve[ment]" in Plaintiff's medical conditions. (R. at 75–76). An ALJ must not make inferences about a Plaintiff's condition from the level of treatment pursued or received unless the ALJ has explored the Plaintiff's explanations about the lack of medical care. *Craft*, 539 F.3d at 679. The ALJ noted that Plaintiff "did not seek treatment from about 2010 to 2014" (R. at 75) but did not ask questions or explore this issue with Plaintiff or his grandmother at the hearing. On remand, the ALJ should "consider and address reasons for not pursuing treatment that are pertinent to [Plaintiff's] case." SSR 16-3p.

The ALJ also improperly "played doctor" by concluding, without sufficient explanation, that Plaintiff responded well to routine and conservative treatment and his medical conditions improved overall.[4] It is well-settled that an ALJ must not substitute her own judgment for a physician's opinion without relying on other medical evidence or authority in the record. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). And there can be a "great distance" between an individual who responds to treatment and medication and one who is able to enter the workforce. *See Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011). Despite finding that Plaintiff had severe impairments of, among other things, attention deficit hyperactivity disorder, post-traumatic stress disorder, and adjustment disorder vs bipolar disorder, the ALJ's opinion does not reflect an understanding that a person under treatment for a chronic disease, whether physical or psychiatric, is likely to have "better days and worse days" and symptoms that "wax and wane." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (internal citations omitted). Importantly, the ALJ did not explain how Plaintiff's alleged improvement restored his ability to work. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [ ] work.").

### 3. Daily Activities

In further support of her RFC finding, the ALJ cited Plaintiff's "wide ranging daily activities suggesting greater functional capacity." The ALJ did not specify whether she was referring to Plaintiff's physical or mental functional capacity. In

---

[4] It is also confusing to the Court how on one hand, the ALJ found that the record lacked a longitudinal treatment history, but on the other, she summarily concluded the Plaintiff's condition had "improved."

any case, Plaintiff's ability to do limited chores and self-care says little about his ability to perform the tasks of a full time job. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The ALJ also disregarded favorable evidence to Plaintiff in this regard. The ALJ noted that Plaintiff "has a child" (R. at 69), but ignored the testimony by both Plaintiff and his grandmother that he does not live with his son, his grandmother is the caretaker, and his visits with his son are supervised. (R. at 20–21, 41–42). *See Scrogham v. Colvin*, 765 F.3d 685, 698-99 (7th Cir. 2014) (faulting the ALJ for "consider[ing] evidence about [claimant's] activities selectively, ignoring evidence that contradicted her finding."). And again, the ALJ did not connect her observations about Plaintiff's daily activities with his ability to work.

**B. The VE**

Both the ALJ's RFC assessment and the hypothetical posed to the VE "must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *see O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("[T]he most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."); 20 C.F.R. § 404.1545. With regard to mental limitations, the hypothetical question must account for, and the VE must consider, documented deficiencies of concentration, persistence, or pace. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).[5]

---

[5] Although it is not necessary that the ALJ use the precise terminology of "concentration," "persistence," or "pace," the Court cannot assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record. *Varga*, 794 F.3d at 814; *Yurt*, 758 F.3d at 857.

The ALJ posed three hypotheticals to the VE. The Court initially notes that the VE did not testify that she independently reviewed the record and therefore the VE would not have knowledge of all of Plaintiff's limitations without the ALJ explaining them. The ALJ's first hypothetical asked the VE to consider "an individual who's younger in age with a limited education, no past relevant work…and…Can never work in environments with exposure to concentrated pulmonary irritants, such as dust, fumes, odors, gases, can perform simple routine repetitive works [*sic*] tasks that can be learned on short demonstration, no work requiring math computation or abilities. Can follow simple instructions, but cannot plan work independently. No more than occasional contact with supervisors, coworkers and the general public. And no work on joint tasks with coworkers, and no fast production paced work, only goal oriented work." (R. at 51–52). The VE testified that a person with this RFC could perform work as a food service worker or dietary aide, kitchen helper, bakery worker, cafeteria attendant, and small products assembler. (*Id.* at 53). The ALJ then posited a second hypothetical, adding to the criteria of the first hypothetical RFC that the plaintiff "requires re-demonstration of work tasks up to twice daily after the initial learning period." (*Id.*). The VE testified that there would be no competitive employment available in this situation. (*Id.* at 54). The ALJ then posited a third hypothetical, adding to the first hypothetical RFC that plaintiff "occasionally requires redirection back to task because they're falling off task." (*Id.*). The VE testified that there would be no competitive employment available. (*Id.*).

In her decision, the ALJ determined that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace and specifically acknowledged the "numerous reports from [Plaintiff's] family, teachers and mental health practitioners that [Plaintiff] has difficulties focusing." (R. at 68). Because, as discussed, the Court found that the ALJ's mental RFC determination was not supported by substantial evidence, the first hypothetical, which mirrored that RFC, similarly was not supported by substantial evidence. *See Yurt*, 758 F.3d at 858–59 (rejecting the idea that "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.") (citations omitted).

Furthermore, the ALJ failed to explain for why she relied solely on the VE's response to her first hypothetical. The Court finds this troubling considering the VE's testimony that there would be no competitive employment available for an individual with Plaintiff's RFC who "required re-demonstration of work tasks up to twice daily after the initial learning period" or "occasionally required redirection back to task because they're falling off task." *See Sayles v. Barnhart*, No. 00 C 7200, 2001 U.S. Dist. LEXIS 20398, at *26 (N.D. Ill. Dec. 6, 2001) ("The fundamental problem with the ALJ's determination is that…she addressed the VE's opinion in response to only one of the hypotheticals -- the first one -- and disregarded the others…We believe that this general rule [that the ALJ must consider all relevant evidence] has special force in cases where the ALJ solicits the testimony and opinions of a vocational expert at Step 5, but then proceeds to disregard this testimony without ex-

planation."); *Harris v. Astrue*, No. 2:06-CV-222, 2007 U.S. Dist. LEXIS 96920, at *71 (N.D. Ind. Aug. 27, 2007) ("The ALJ failed to explain his choice to use the factually incomplete hypothetical as the basis for his conclusions."). As the court in *Bailey v. Barnhart* stated, this "raises a red flag that, at a minimum, needs to be acknowledged on remand." 473 F. Supp. 2d 822, 840 (N.D. Ill. 2006).

Another problem, as Plaintiff points out (Dkt. 19 at 18), is that the VE specified that the education level used for all of the hypotheticals was 4th to 6th grade. (R. at 55). Yet the record showed, and the ALJ acknowledged, that Plaintiff was always *below* a 4th grade level in all subjects. (*Id.* at 75; 194–201; 299–310). It is not clear to the Court why, despite the VE's testimony regarding the grade level used for all of the hypotheticals, the ALJ nevertheless determined that Plaintiff was not disabled, relying on the hypothetical with the *least* number of limitations in concentration, persistence, and pace.

### C. Summary and Other Issues

In sum, the ALJ's decision was not supported by substantial evidence and the Court cannot assess the validity of the ALJ's findings and provide meaningful judicial review. Remand for further proceedings is required where there is a failure "to build an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC." *Yurt*, 758 F.3d at 859.

On remand, the ALJ shall properly consider and weigh the testimony of both Plaintiff and his grandmother, then reevaluate Plaintiff's impairments and RFC, considering all of the evidence and testimony of record and shall explain the basis of

her findings in accordance with applicable regulations and rulings. With the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform. Finally, the Court does not believe this case meets the standard for an award of benefits and declines that request by Plaintiff. *Briscoe ex. re. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (citation omitted) (Reversal with an instruction to award benefits only appropriate if "all factual issues have been resolved and the record can yield but one supportable conclusion."). That is not the case here, and it is not the purview of this Court to gather or reweigh evidence. Therefore, Plaintiff's motion is granted insofar as it requests remand for further proceedings.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to reverse the ALJ's decision and remand for additional proceedings [19] is **GRANTED**, and the Commissioner's motion for summary judgment [22] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: January 2, 2018

*/s/ Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge